UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM E. BUCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:12CV1879 SNLJ** |
| | ) | |
| **AMERICAN FAMILY MUTUAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment (#30). This is an employment discrimination case alleging discrimination on the basis of race and retaliation. Plaintiff claims that defendant instigated an investigation of him because of race and terminated his employment because of race and a discrimination complaint he made against his supervisor. All responsive pleadings have been filed and this matter is ripe for disposition.

## I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a

genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);

*Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada

Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A

party resisting summary judgment has the burden to designate the specific facts that create a

triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004).

Self-serving, conclusory statements without support are not sufficient to defeat summary

judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

"While employment discrimination cases are often fact intensive and dependent on

nuance in the workplace, they are not immune from summary judgment." *Fercello v. County of

Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010) (citing *Berg v. Norand Corp.*, 169 F.3d 1140, 1144

(8th Cir. 1999). There is no separate summary judgment standard for employment discrimination

cases and "it remains a useful pretrial tool to determine whether or not any case, including one

alleging discrimination, merits a trial." *Id.*

In ruling on a motion for summary judgment, the court must review the facts in a light

most favorable to the party opposing the motion and give that party the benefit of any inferences

that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v.

DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The court is required to resolve all

conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical

Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

The movant's statement of facts are deemed admitted if not specifically controverted by

the party opposing the motion. Local Rule 4.01 (E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a
> statement of uncontroverted material facts, set forth in a separately numbered paragraph

for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. ***All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party***.

(emphasis added). Even where all of movant's statements of fact are deemed admitted, the Court must look at the entire record to determine whether summary judgment is warranted. "The Eighth Circuit has determined that when a plaintiff fails to respond adequately to a motion for summary judgment, a district court should not treat such a non-response as sufficient to dispose of the motion." *Lowry v. Powerscreen USB, Inc.*, 72 F.Supp.2d 1061, 1064 (E.D. Mo. 1999) (citing *Canada v. Union Electric Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.* "In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." *Id.* This Court is not, however, obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Barge v. Anheuser-Busch, Inc.,* 87 F.3d 256, 260 (8th Cir. 1996) (quoting *White v. McDonnell Douglas Corp.,* 904 F.2d 456, 458 (8th Cir. 1990)); *Rogers v. Metro Bi-State Development*, 4:08CV1627 CEJ, 2010 WL 1186523, at *1 (E.D. Mo. March 29, 2010).

## II.    Facts

In response to defendant's statement of uncontroverted material facts, plaintiff accepts the majority of the facts. As to the facts plaintiff purports to dispute, plaintiff merely states "plaintiff disputes" or plaintiff makes a vague, conclusory response to convey disagreement based on conjecture. Plaintiff did not dispute the facts with specific references to portions of the

record as required by Local Rule 4.01 (E). Further, plaintiff did not comply with the requirements of Federal Rule of Civil Procedure 56(c)(1). Rule 56(c)(1) requires that any party attempting to dispute a statement of fact (1) cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Because plaintiff failed to specifically controvert defendant's statement of facts, those facts are deemed admitted for purposes of summary judgment. *O'Connell v. Accurate Plumbing, LLC*, 4:04CV1368 FRB, 2005 WL 2176926, at *2 (E.D. Mo. Sept. 8, 2005) (citing *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 724-25 (8th Cir. 2003); *Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762-63 (8th Cir. 2003)). The Court adopts defendant's statement of uncontroverted material facts as its findings of fact for purposes of summary judgment, with some modifications and additions based on the Court's review of the record properly before it.

Plaintiff began employment with defendant in 1992 and held several positions with defendant between 1992 and 2009. In January 2009, Lisa Moran, Associate Vice President of the Central Region, promoted plaintiff to Regional Specialty Operations Manager ("RSO Manager"), in which role he reported directly to her. During plaintiff's tenure as RSO Manager, Moran evaluated plaintiff's work performance positively. In both 2009 and 2010, Moran rated plaintiff on target and above including areas rated exceptional in his reviews. Plaintiff received "performance pay" raises under Moran's supervision. Moran supported plaintiff in 2010 when

defendant received an anonymous complaint that plaintiff had inappropriate relationships with female employees. When defendant's Human Resources department investigated, Moran supported plaintiff by stating the allegation was nothing more than a rumor. Moran supported plaintiff's decisions regarding the Performance Improvement Process as it applied to his subordinate employees.

As RSO Manager, plaintiff's responsibilities included directing, leading, and setting strategy for the Regional Customer Care Center. "Key Behaviors" for plaintiff in the RSO Manager position included: exhibiting uncompromising ethics and integrity; taking responsibility for continuous learning and development; seeking others' feedback and identifying and acting on issues and opportunities; communicating effectively and utilizing active listening skills; and acknowledging mistakes and learning from them. As RSO Manager, plaintiff also had to be an example of leadership and maintain strong relationships with subordinate employees, including his seven direct reports (Dennis Atkins, Jim Bono, David Diamond, Jim Gross, Bob Hagensen, Todd Johnson, and Dwight Snodgrass).

Plaintiff also had responsibility for complying with defendant's policies, which were available to him online throughout his employment. Among others, those policies related to Equal Employment Opportunity, Non-Discrimination, Workplace Violence, and Standards of Conduct. With respect to defendant's Workplace Violence Prevention Policy, plaintiff admits that conduct violating the policy would be a serious issue warranting action. With respect to the Standards of Conduct, plaintiff admits examples of conduct violating the standards would include threats of violence, intimidating employees, and using offensive language.

Based on its policies, defendant had a responsibility to investigate complaints of misconduct that implicated violations of defendant's policies. Plaintiff admits defendant's

policies created such a responsibility to investigate complaints of misconduct and/or discrimination, and subsequent discipline for violations (including termination of employment) depending on the circumstances. Plaintiff admits defendant held him to a high standard, as it did all of its employees. Defendant has a Performance Improvement Process that can be utilized to address concerns related to a subordinate employee's work performance.

In 2011, plaintiff had concerns regarding the work performance of Dave Diamond (Caucasian), one of his direct reports. Plaintiff initiated steps in the Performance Improvement Process for Diamond, which initially included assigning a mentor to him and then issuing a Written Reminder. On June 13, 2011, plaintiff placed Diamond on a Written Reminder for various performance concerns. Diamond submitted a written response to the Written Reminder, in which he denied the performance issues and claimed plaintiff raised many of the issues for the first time in the Written Reminder. Moran supported taking action to address Diamond's performance. In speaking to Diamond about the Written Reminder, Moran told him she expected him to abide by the Written Reminder and meet its expectations. Moran did not remove or rescind the Written Reminder to Diamond.

On June 25, 2011, Diamond followed up his response to the Written Reminder with a detailed Complaint to Human Resources ("HR Complaint") regarding plaintiff. The allegations in Diamond's HR Complaint included:

- Plaintiff made repeated embarrassing or humiliating comments about Diamond's weight and back problems in the presence of other employees.

- Plaintiff made false allegations that Diamond was drinking on the job, despite knowing Diamond was on pain medication for his back problems.

- Plaintiff made comments about Diamond's age and looking immature drinking Red Bull at meetings, which plaintiff banned Diamond from doing.

- Plaintiff simulated he was going to hit Diamond in the back of the head during a group meeting.

- Plaintiff physically struck Diamond in the arm at a group meeting.

- Plaintiff yelled, cussed, and insulted Diamond for various decisions, which plaintiff did to others as well.

- Plaintiff instructed Diamond and other employees from having direct communication with Moran, instead insisting that all communications go through him.

Diamond also expressed fear of plaintiff's bullying and retaliation for coming forward with his concerns.

Diamond's HR Complaint followed shortly after a telephone conversation between Moran and Snodgrass, another of plaintiff's direct reports, in which Snodgrass expressed serious concerns about plaintiff's behavior. In that conversation on or about June 23, 2011, Snodgrass shared with Moran concerns he had regarding plaintiff's temper and fear of what plaintiff might do, which he stated was shared by others. Based on the serious concerns Diamond and Snodgrass raised, and her obligations as a manager, Moran requested an investigation into the concerns raised.

Ken Licht, Employee Relations Specialist, conducted the investigation for defendant. Licht decided to use an interview/survey form previously used to rate manager effectiveness to guide interviews with each of plaintiff's direct reports, five Claims Care Center Managers, and a CRP Field Adjuster. He also interviewed plaintiff. Licht conducted his investigation from July 1-12, 2011, and submitted an Investigation Report on July 13, 2011, based on his contemporaneous notes from various interviews. As reflected in the Investigation Report, employees other than Diamond corroborated complaints that:

- Plaintiff yelled, screamed, and cussed at subordinates.

- Plaintiff made comments about Diamond's weight and that of another employee.

- Plaintiff instructed subordinates not to talk to Moran directly.

- The work environment under plaintiff was "hostile" or "intimidating," and subordinates feared retaliation from him.

- Plaintiff simulated a hit to the back of Diamond's head during a recent meeting.

- Plaintiff hit or very suddenly grabbed Diamond's arm in a recent meeting.

Licht summarized the findings of his investigation as follows:

> Evidence supports Dave Diamond's initial complaint that Bill Buck yelled and cussed at him and that he embarrassed Dave with comments about his weight. Dave's charges that Bill made a motion simulating a hit to the back of his head as he was talking at a unit meeting and that Bill hit his arm during that same meeting are supported by witnesses' accounts. Three other managers reported sessions with Bill where he raised his voice at them to a level described as yelling or screaming. Though Bill expressed surprise that anyone would say he told them not to talk to Lisa Moran, three managers stated that he specifically instructed them not to talk to her. Two managers said Bill had threatened to fire them and one said he felt like he would be out the door. Two of Bill's direct reports felt they were working in a hostile environment, and three of his direct reports described his management style as intimidating, bullying, abusive, or dictatorial. Other common concerns expressed by at least three managers were that Bill backs reps over managers and that he changes expectations from one day to the next.

On July 29, 2011, plaintiff and Moran discussed a concern that managers believed from a recent meeting that the employment of claims representatives could be terminated based solely on poor Touch Point results (i.e., customer satisfaction survey results). At that time, Moran told plaintiff she would be sending out a region-wide email (i.e., to employees reporting to plaintiff and others) to clarify defendant's position that Touch Point results alone were not a measure for employee performance. Despite Moran's stated intent to send a region-wide email, plaintiff unilaterally sent a July 29, 2011, email to his St. Louis managers addressing the Touch Point results issue.

On August 1, 2011, Moran responded to plaintiff's email questioning why he disregarded her plan to send a region-wide email. In doing so, she said his decision did not "show good judgment on [plaintiff's] part and was completely inappropriate for [him] to have sent." The

same day, plaintiff forwarded Moran's e-mail to Jon Guldan, Human Resources Regional Manager, claiming that Moran had "discriminatory intentions" toward him and retaliated "because of the issues around [Diamond's] write up." The August 1, 2011, email to Guldan is the first and only complaint of discrimination plaintiff made while employed at defendant.

In response to plaintiff's complaint, defendant promptly initiated an investigation by Diana Cook, Employee Relations Specialist. As part of her investigation, Ms. Cook gathered documents from plaintiff related to his complaint, and interviewed both plaintiff and Moran. On or about August 18, 2011, Ms. Cook reported the results of her investigation to Todd Straub, Human Resources Regional Manager, stating the investigation did not substantiate plaintiff's allegations of discrimination. She stated a conflict in management styles existed between plaintiff and Moran, and suggested plaintiff reach out to Moran to resolve the issues.

Moran informed Tim Constien, Vice President of Claims Operations, of the Investigation Report and the complaint made against her, which she did via email on August 16, 2011. Moran informed Constien of the complaint against her because she wanted to ensure he had been fully informed of the circumstances before taking any action regarding plaintiff—no action was taken until all investigations concluded. In her August 16, 2011, email to Constien, Moran attached a proposed Written Reminder that she wanted issued once approved by all necessary parties, an approach she understood to be "supported by legal and HR" based on a conversation with Licht. The Written Reminder approach was one of several options on the table. Moran prepared the proposed Written Reminder in advance of the final decision because it was the one option that required work to develop a formal plan for ongoing action.

After all investigations had concluded, Moran, Constien, and Straub met on August 24, 2011, to discuss the results of the investigation regarding plaintiff and to discuss the appropriate

course of action. At that meeting, the options discussed included (a) a proposed Written Reminder to plaintiff, which Moran had previously worked with Licht to prepare; (b) removing plaintiff from a management position; and (c) termination of plaintiff's employment. After considering each of the options, Moran recommended that defendant terminate plaintiff's employment, which both Constien and Straub supported. The decision was based on:

- The conclusion based on the Investigation Report that plaintiff violated defendant's policies by intimidating/bullying subordinates, making embarrassing comments about employees' weight, and engaging in workplace violence (including actual physical contact with a subordinate employee and threats).

- The conclusion that the issues noted in the Investigation Report showed plaintiff had permanently damaged his relationships with his team members and could not lead them going forward.

- A belief managers like plaintiff are subject to a higher standard in their workplace conduct, which plaintiff failed to meet.

In deciding to terminate plaintiff's employment, Moran, Constien, and Straub did not discuss plaintiff's race and/or his complaint against Moran other than to confirm the investigation had concluded.

Based on the Investigation Report, defendant terminated plaintiff's employment on October 7, 2011. Defendant waited until October 7 because it wanted to avoid the risk of plaintiff disclosing confidential information he possessed about an upcoming reorganization within the company that was resulting in the closing of a number of offices.

On January 23, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights alleging race discrimination and retaliation related to the investigation of Diamond's HR Complaint, his complaint against Moran, and the termination of his employment. The EEOC and the MCHR

issued Notices of Right to Sue on August 3, 2012, and October 5, 2012, respectively. Plaintiff filed this action on October 16, 2012.

## III.    Discussion

Plaintiff alleges claims under 42 U.S.C. § 1981, Title VII, and the Missouri Human Rights Act ("MHRA") that defendant discriminated against him based on his race in investigating him and terminating his employment after he issued discipline to a subordinate. Additionally, plaintiff alleges claims under Title VII and the MHRA that defendant retaliated against him by terminating his employment after he filed a complaint alleging discrimination by his supervisor.

In his complaint, plaintiff, who is African American, alleges that his supervisor, a Caucasian female, launched an investigation against him after he had disciplined one of his subordinates, who is a Caucasian male. He alleges that "no Caucasian in management had ever been subjected to being disciplined themselves for disciplining a subordinate" or "been investigated in the manner that [defendant] investigated plaintiff, which included [defendant] taking a selective survey of those reporting to plaintiff." According to plaintiff, after the investigation was complete, the HR department recommended that plaintiff be given a Written Reminder. After the investigation was complete but before any action had been taken in response to the investigation, plaintiff filed a discrimination complaint against his supervisor. Plaintiff contends that after the investigation, "which was not even near in scope and depth to the investigation HR conducted against Plaintiff," exonerated his supervisor, she laid plans to terminate him. He alleges that he was "abruptly terminated, without any forewarning, without any reason being given, and without ever having been given the opportunity to be placed on performance improvement status."

In response to the motion for summary judgment, plaintiff made allegations similar to those in his complaint. However, plaintiff did not offer any "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to support his allegations. Instead, plaintiff's response to the motion is based on conjecture and unsupported logical leaps and includes misrepresentation of the materials produced by defendant. Additionally, plaintiff cites materials that are not in the record before this Court.[1]

### A.      Racial Discrimination

Courts apply the same analysis to claims of discrimination brought under Title VII and 42 U.S.C. § 1981. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 520 (8th Cir. 2010) (quoting *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009). To survive a motion for summary judgment, plaintiff must present direct evidence of unlawful discrimination or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *Gibson v. American Greetings Corp*., 670 F.3d 844, 853 (8th Cir. 2012).

"To prove intentional discrimination through direct proof, a plaintiff must establish 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Id.* (quoting *Putman v. Unity Health Sys.,* 348 F.3d 732, 735 (8th Cir. 2003)). Under the burden-shifting framework, plaintiff must first establish a *prima facie* case of

---

[1] Plaintiff's response includes a "factual background" that is not supported with any citations to the record. Additionally, the argument section includes references to deposition exhibits that are not part of the court record.

discrimination. *Jackson v. United Parcel Serv., Inc.,* 643 F.3d 1081, 1086 (8th Cir. 2011). "A *prima facie* case creates a rebuttable presumption of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). The burden then shifts to the defendant to prove a legitimate, nondiscriminatory reason for its action. *Id.* If defendant establishes such a reason, the presumption disappears, and the burden shifts back to the plaintiff to prove that defendant's proffered reason is a pretext for unlawful discrimination. *Id.*

To establish a prima facie case for race discrimination, plaintiff must show that (1) he is a member of a protected class, (2) he met his employer's (defendant's) legitimate expectations, (3) he suffered an adverse employment action, and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Gibson*, 670 F.3d at 854 (quoting *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010)).

Plaintiff has not presented any direct evidence of racial discrimination. Therefore, this Court will analyze his claim under the *McDonnell Douglas* burden-shifting framework. With respect to plaintiff's race discrimination claim, no circumstances exist to give rise to an inference of discrimination. Indeed, the uncontroverted facts show the absence of any such circumstances.

Plaintiff has offered only his own conjecture that defendant investigated him and then terminated his employment because he disciplined Diamond, a Caucasian subordinate. Evidence, not contentions, avoids summary judgment. Contrary to plaintiff's conjecture, the uncontroverted facts evidence that defendant initiated its investigation of plaintiff after it received two separate complaints of alleged misconduct by plaintiff, including allegations of workplace violence and other hostile behavior that would violate defendant's policies and would be contrary to plaintiff's responsibilities as a member of management. Defendant's policies established a duty to

investigate the issues in those complaints. The investigation substantiated the complaints, with a number of employees corroborating the various allegations. Defendant terminated plaintiff's employment based on the results of the investigation and the irreparable damage perceived in the working relationships between plaintiff and his subordinates.

Plaintiff argues that defendant's conclusion that plaintiff had engaged in violence in the workplace was not supported by the investigation report and that there is "no sound evidence that Plaintiff ever acted violently." The federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 2004). As long as defendant had a good faith basis for discharging plaintiff, it does not matter whether defendant correctly concluded that plaintiff committed serious violations of company policies. *Bone*, 686 F.3d at 955. Moreover, aside from workplace violence, plaintiff's argument ignores the uncontroverted facts of numerous other instances of misconduct that led to termination of his employment. The uncontroverted record shows that plaintiff treated subordinate employees harshly (yelling, screaming, and cussing), made offensive comments about weight, and created a hostile or intimidating work environment. It is clear from the allegations against plaintiff and the investigation report that defendant had a good faith basis for investigating plaintiff and terminating his employment.

Even if this Court assumed that plaintiff could establish a prima facie case for race discrimination, defendant has established a legitimate, nondiscriminatory reason for its decisions to investigate plaintiff and terminate his employment. Plaintiff has not produced any evidence that defendant's proffered reason is a pretext for unlawful discrimination.

"A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (internal quotations omitted). To establish that defendant's reason is a pretext for unlawful discrimination based on disparate treatment, Plaintiff must pass the "rigorous test" to show that he and more favorably treated employees were "similarly situated in all relevant respects." *Evance v. Trumann Health Services, LLC*, 719 F.3d 673, 678 (8th Cir. 2013). "The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* Further, the Eighth Circuit has held that plaintiffs fail to show that coworkers are similarly situated where they hold different jobs than the plaintiff. *See Fercello v. County of Ramsey*, 612 F.3d 1069, 1082 (8th Cir. 2010) (employees who had different positions were not similarly situated to the plaintiff); *LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 694 (8th Cir. 2001) (employee who worked in a different department and had a different position was not similarly situated).

Plaintiff argues that he was treated differently than defendant's employees, Doug Nelson and Brian Tkashuk, who are Caucasian males. He alleges that Nelson, who was in "upper management similar to plaintiff," was investigated for poor working relationships with his subordinates but that he was not terminated and was not placed on a performance improvement plan.[2] As to Tkashuk, plaintiff points out that Constien testified that Tkashuk is the only person that he had placed on a performance improvement plan. Plaintiff, however, fails to cite any evidence to establish that Nelson and/or Tkashuk engaged in the same conduct as plaintiff or held the same job/position in the company in order to establish that they were similarly situated.

[2] Plaintiff cites to the deposition testimony of Constien on this issue, which is in the record before the Court as an exhibit in support of defendant's motion. In reply, defendant cites to additional deposition testimony by Constien on this subject.

Instead, the evidence in the record before the Court shows that Nelson and Tkashuk were not similarly situated to plaintiff. Plaintiff was a regional specialty operations manager. Nelson was a state operations manager. Nelson was investigated and found to have an issue with working effectively on business problems with another manager. Tkashuk was placed on a performance improvement plan following his refusal to move to another work location. Specifically, defendant placed him on a "decision-making leave" to allow him time to decide whether to accept the transfer. Neither situation involved any complaints of physical violence, threats of violence, supervisor intimidation, bullying, foul language, or other hostile supervisor behavior.

Plaintiff has failed to present any evidence of racial discrimination. Instead, the uncontroverted evidence shows that the termination of plaintiff's employment was a direct result of the substantiated complaints of plaintiff's violations of defendant's policies. Plaintiff has not presented any evidence of racial bias by the decision makers or any disparate treatment. In sum, this Court concludes that plaintiff has not shown any circumstances that give rise to a reasonable inference of racial discrimination with regard to the decisions to investigate plaintiff and to terminate his employment. Further, the uncontroverted facts establish a legitimate, nondiscriminatory reason for defendant's decisions and plaintiff has not produced any evidence that defendant's proffered reason is a pretext for unlawful discrimination. Therefore, Defendant is entitled to judgment as a matter of law on plaintiff's claims of discrimination based on race under 42 U.S.C. § 1981 and Title VII.

### B.    Retaliation

As with a discrimination claim, to survive a motion for summary judgment, plaintiff must present direct evidence of retaliation or create an inference of retaliation under the burden-

shifting framework established in *McDonnell Douglas*. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011). "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Absent direct evidence of retaliation, the burden-shifting framework is applied in the same manner as with a discrimination claim.

To establish a *prima facie* case of unlawful retaliation, plaintiff must establish that (1) he complained of discrimination; (2) his employer took an adverse action against him; and (3) the adverse action was causally linked to the complaint of discrimination. *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011). *Marzec v. Marsh*, 990 F.2d 393, 396 (8th Cir. 1993). "In terms of the causal connection, the plaintiff must show that the protected conduct was a 'determinative – not merely motivating – factor in the employer's adverse employment decision.'" *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 985 (8th Cir. 2011) (quoting *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)). "If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (2011) (quoting *Fercello*, 612 F.3d at 1077-78). "An employee can prove that his employer's articulated justification for an adverse employment action is pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is

unworthy of credence." *Id.* "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Id.* (quoting *Torgeson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

As with his racial discrimination claim, plaintiff has not presented any direct evidence of discriminatory treatment based on retaliation. As a result, his claim of retaliation is also analyzed under the *McDonnell Douglas* burden-shifting framework. With respect to plaintiff's retaliation claim, no circumstances exist to give rise to an inference of retaliation based on plaintiff's discrimination complaint against his supervisor. Indeed, the same uncontroverted facts that showed the absence of racial discrimination also show the absence of any retaliation with regard to the termination of plaintiff's employment. Further, the uncontroverted evidence before this Court establishes a legitimate, nondiscriminatory reason for defendant's termination of plaintiff's employment. Plaintiff has not produced any evidence that defendant's proffered reason is a pretext for unlawful discrimination. The complaint against plaintiff and the investigation report substantiating plaintiff's violations of defendant's company policies is without question a legitimate, nondiscriminatory reason for defendant's termination of plaintiff's employment. As a result, Defendant is also entitled to judgment as a matter of law on plaintiff's claims of discrimination based on retaliation under Title VII.

### C.  MHRA claims

Because plaintiff asserts claims of racial discrimination and retaliation under the MHRA, the Court looks to Missouri law in resolving defendant's motion on those claims. Discrimination and retaliation claims under the MHRA must be established by showing elements required by the MHRA, rather than by reference to cases such as *McDonnell Douglas* analyzing violations of federal law. *Hill v. Ford*, 277 S.W.3d 659, 664-65 (Mo. banc 2009). Under the MHRA, an

employer is prohibited from discharging or otherwise discriminating against an individual based on race. Section 213.055(1)(a) RSMo. The MHRA defines "discrimination" as "any unfair treatment based on [race, …] as it relates to employment. Section 213.010(5) RSMo. Further, it is unlawful "to retaliate or discriminate in any manner against any other person" because such person has complained about unlawful discrimination prohibited by section 213.055. Section 213.070 RSMo.

For a race discrimination claim, plaintiff must establish: (1) defendant terminated plaintiff; (2) plaintiff's race was a contributing factor in his termination; and (3) as a direct result of the termination, plaintiff suffered damage. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820-21 (Mo. banc 2007) (citing Missouri Approved Instruction 31.24).[3] Retaliation for opposing discrimination or for filing a complaint also constitutes discrimination under the MHRA, and is proven by the same essential elements, substituting retaliation as the type of discrimination. *Hill v. Ford Motor Co.,* 277 S.W.3d 659, 664–65 (Mo.2009).

In *Daughterty*, the Missouri Supreme Court noted that the MHRA's discrimination safeguards "are not identical to the federal standards and can offer greater discrimination protection." *Daughterty*, 231 S.W.3d at 819. The court instructed that courts should be "guided by both Missouri law and federal employment discrimination case law that is consistent with Missouri law." *Id.* at 818. Additionally, the court held that a discrimination claim survives summary judgment "if there is a genuine issue of material fact as to whether [discriminatory act] was a contributing factor in [defendant's] termination decision." *Id.* Missouri courts have defined "contributing factor" as "one that contributed a share in anything or has a part in producing the effect." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. App. E.D. 2009).

---

[3] MAI 31.24 has been withdrawn and replaced by MAI 38.01.

There is no evidence before this Court that race or retaliation was a contributing factor in the decision to terminate plaintiff. In fact, the individuals involved in the termination of plaintiff's employment had previously treated plaintiff favorably with clear knowledge of his race. For example, Moran promoted plaintiff to the RSO Manager position and positively reviewed his performance. Plaintiff received performance pay raises under Moran's supervision. Plaintiff has offered nothing more than his own sheer speculation in support of his claims, which is insufficient to establish discrimination even under the MHRA's broader standard. It is clear that the complaints against plaintiff, which were corroborated by multiple employees, were serious and termination was a course of action available under defendant's policies. It is also clear that the termination of plaintiff's employment was a direct result of the substantiated complaints regarding plaintiff's violations of defendant's policies. Plaintiff has failed to present any evidence that racial discrimination or retaliation was a contributing factor in the termination of his employment. For these reasons, Defendant is entitled to judgment as a matter of law on plaintiff's claims of discrimination based on race and retaliation under the MHRA.

## IV.    CONCLUSION

There are simply no facts in the record before this Court to suggest that plaintiff's race or his discrimination complaint against his supervisor was the reason for, or even a contributing factor in, defendant's decision to investigate the complaints against plaintiff or the decision to terminate plaintiff's employment. Additionally, the legitimate, non-pretextual reason for defendant's termination of plaintiff's employment is evident. As a result, Defendant is entitled to judgment as a matter of law on plaintiff's claims of discrimination based on race under 42 U.S.C. § 1981, Title VII, and the MHRA and plaintiff's claims of discrimination based on retaliation under Title VII and the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that defendant American Family Mutual Insurance

Company's motion for summary judgment (#30) is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment is entered in favor of defendant American

Family Mutual Insurance Company. A separate Judgment will accompany this Memorandum

and Order.

Dated this 24th day of January, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE